## GROOM v. DYER.

No. 9097—Opinion Filed Feb. 25, 1919.

(179 Pac. 12.)

(Syllabus.)

1. **Indians—Conveyance of Allotment—Approval by Secretary of Interior.**

Under section 22, Act Cong. April 26, 1906, c. 1876, 34 Stat. L. 137, the authority was vested exclusively in the Secretary of the In_terior to approve a conveyance of any inter-

est of a full-blood heir of a deceased allottee.

## 2. Same—Approval of County Court.

The approval by the county court on. April 3, 1914, of a deed executed after Act April 26. 1906, c. 1876. 34 Stat. 137, and prior to Act May 27, 1908, c. 199 35 Stat. 312, by a full-blood heir of an interest in inherited land, is unauthorized and void.

## 3. Same—Jurisdiction.

Under section 9 of Act Cong. May 27, 1908, c. 199, 35 Stat. L. 312, the only court having authority to approve a conveyance of any in_ terest to a full-blood heir of a deceased allottee is the court having jurisdiction of the settlement of the estate of said allottee.

## 4. Same.

The approval by a county court of a conveyance by a full-blood heir not having jurisdiction of the settlement of the estate of a deceased allottee is unauthorized and void, and may be collaterally attacked.

## 5. Indians—Restricted Indian Lands—Sale —Subsequent Conveyance.

Section 2260, Rev. Laws 1910, has no application to restricted Indian lands; Act Cong. May 27, 1908, c. 199, 35 Stat. L. 312, controls; and where a purchaser comes into possession of land by virtue of a conveyance made by a restricted Indian, such possession in no manner affects the right of the Indian to convey to another after restrictions are removed.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by Walter W. Groom (William L. Cheatham, substituted plaintiff) against Joseph E. Dyer. Judgment for defendant, motion for new trial overruled, and plaintiff brings error. Reversed and remanded.

Cheatham & Beaver and Thrift & Davenport, for plaintiff in error.

McDougal, Lytle, Allen & Hodges, for defendant in error.

PITCHFORD, J. Minnie Barnhill, nee Sawyer, a full-blood Creek Indian, enrolled opposite No. 8421, died February 14, 1907, leaving surviving her Albert Barnhill, her husband, Hepsey Bear. her mother ,and her half-sisters, Susie Johnson, Hattie Bush, and her half-brother, Thomas Lewis. All of the above named were full-blood Indians except the husband. Albert Barnhill. The plaintiff claims title to the allotment by virtue of the deed executed by Hepsey Bear on the 11th day of September, 1911, to A. J. Combs, said deed being approved by the county judge of McIntosh county on the same date.

This action was commenced in the district court of Creek county by the plaintiff in error against the defendant in error for the purpose| of quieting the title of plaintiff to the lands in controversy. The defendant claims title by virtue of certain deeds executed by Hepsey Bear. Susie Johnson, Hattie Bush, and Thomas Lewis to Albert Barnhill in 1907, and a deed from Albert Barnhill in 1907 to the defendant. On April 3, 1914, Hepsey Bear and others filed in the county court of Pittsburg county an amended petition for the approval of conveyance of inherited land by full-blood heirs. The petition, among other things, stated that heretofore the petitioners had sold said lands to Albert Barnhill of Pittsburg county, state of Oklahoma, for the sum of $500; that said sum was a fair consideration for the sale of said land at the time same was sold; that said consideration has been fully paid in cash to the said Hepsey Bear. Susie Johnson, Hat_ tie Bush, and Thomas Lewis; that since said date, and on the 23d of November, 1907, Albert Barnhill sold said land to the petitioner. J. E. Dyer, and the said J. E. Dyer paid the said Albert Barnhill $1 000 in cash for said land: and further, that J. E. Dyer agreed to pay Hepsey Bear the sum of $500 at the termination of the litigation in case the title to the land was upheld in the defendant, J. E. Dyer: and, further that on the 3d day of April, 1914, Hepsey Bear had executed a deed to the land in dispute to the defendant, Dyer, conveying all her right and title to the same for the consideration of $500. $50 being paid and $450 to be paid when the title to the lands was quieted in the defendant, Dyer. On the same day, to wit, the 3d day of April. 1914, the county judge of Pittsburg county signed an order reciting:

"There came on for hearing the petition of Hepsey Bear for the approval of the warranty deed executed by said Hepsey Bear; Susie Johnson. and Hattie Bush on the 30th day of September 1907, and conveying the property hereinafter described to Albert Barnhill for the sum of $375; and that Hepsey Bear, appearing in open court in person, and the court having heard the evidence of witnesses duly sworn in open court. in support of said petition. finds that Minnie Barnhill, nee Sawyer. died in what is now Pittsburg county, state of Oklahoma; on the 14th day of February 1907. seized and possessed of said land: that the petitioners are full-blood Creek Indians. as shown by the rolls of the Five Civilized Tribes. and it is therefore ordered. adjudged and decreed by the court that the said conveyance be and the same is hereby confirmed and approved."

After hearing the evidence and argument of counsel, the court announced the following findings:

"I rather think that the residence or domicile of the allottee at the time of her death is always an open question in a case wherein the validity of the action of the court approving the deed is a question. In this case, there can be no other conclusion reached from the testimony than the allottee was a resident of and domiciled in Pittsburg county at the time of her death. The affidavit offered in evidence by the plaintiff as impeaching the testimony of Albert Barnhill does not say that the allottee resided in McIntosh county at the time of her death, but says she died in McIntosh county, while of course he now testifies that she died in Pittsburg county, but it occurs to me that this is the only conclusion that the court can come to. Having reached that conclusion, it follows, of course, that the county court of McIntosh county had no jurisdiction to approve the deeds upon which the plaintiff relies, and if the county court of McIntosh county had no jurisdiction, the deed is void and the plaintiff's title thereto fails. The only remaining question is, whether or not the plaintiff has been in possession of these lands, and whether or not that possession is sufficient upon which to base a finding that the plaintiff would be entitled to recover; that is, on possession alone, and I think not. The court is of the opinion that in a case of this kind, where it involves the validity of a deed of a full-blood Indian in an ejectment suit, that possession of the plaintiff cannot be pleaded and proved and relied upon to defeat the title acquired from a full-blood Indian through the approval of the proper court. It is true that there may be some question as to the validity of the contract approved by the county court of Pittsburg county. As I stated a while ago, to approve that deed with the condition that the consideration is to be paid in the event the defendant is successful in this case, whether or not the contract should have been approved by the court was entirely with that court. The court is rather of the opinion that that court had a right to approve such contract if it so desired, and having approved it, this court is bound by it. Under those statements and conclusions, it seems that there can be no other judgment than for the defendant, the plaintiff's title having been shown by the testimony to have entirely failed; that is, the testimony having failed to show any title whatever in the plaintiff. Judgment therefore for the defendant.

"Mr. Rogers: That is not a judgment on their cross-petition.

"By the Court: My opinion is that the plaintiff has failed to establish his case, and therefore judgment for the defendant. It is not necessary, it seems to me, to pass upon the validity of the title of the defendant, having decided plaintiff's title has failed or that the evidence has failed to show any title in the plaintiff upon which a judgment may be based."

The journal entry is as follows:

"Now, on the 10th day of April, A. D. 1916, the above matter comes on to be heard before the court. Wm. L. Cheatham having heretofore by order of this court been substituted as plaintiff in lieu of and for the said W. W. Groom and the said Wm. L. Cheatham appearing in person and by his attorney, H. H. Rogers, the defendants appearing in person and by their attorneys, McDougal & Lytle. Thereupon said cause proceeded to trial by the court without the intervention of a jury. Thereupon plaintiff offered his evidence and rested; thereupon defendant, Jos. E. Dyer, offered his evidence and rested; thereupon, after full argument and the court having been fully advised in the premises, finds from all the evidence offered, the issue herein in favor of the defendant, Jos. E. Dyer, and against the plaintiff, Wm. L. Cheatham, and that the title of the said Jos. E. Dyer in and to the described lots and lands in Creek county, state of Oklahoma, should be quieted as against the said Wm. L. Cheatham, and those by, through and under whom he claims, to all of which findings by the court plaintiff excepts. Wherefore, it is considered, ordered and adjudged by the court that the defendant Jos. E. Dyer, do have and recover judgment; that plaintiff take nothing by reason of the matters and facts and things alleged in this petition, but that as thereto defendants go hence without day and with their costs; that the defendant Jos. E. Dyer, have judgment quieting his title in and to the lands in controversy herein against any claim of the plaintiff, or of any other person by, through or under whom plaintiff claims, and that the said Jos. E. Dyer have judgment for the immediate possession of said lots and lands, and that defendant recover their costs therein. To all of which judgment of the court plaintiff excepts."

Motion for new trial was filed and overruled, and appeal properly lodged in this court. The assignments of error are:

First. The court erred in overruling the motion of plaintiff for a new trial.

Second. That the court erred in admitting in testimony and permitting the same to be read in evidence the deposition of Jeff Isaacs, for the reason that the same had been by the court suppressed and never retaken and for the reason that the court erred in permitting the withdrawal of the deposition by defendant for the purpose.

Third. The court erred in rendering judgment for the defendant for possession of

the land in controversy and quieting title thereto in defendant, for the reason that said judgment does not follow the findings of fact by the court and is not supported by the testimony, the law and the issues in the case.

Fourth. The court erred in rendering judgment for the defendant and against the plaintiff, for the reason that said judgment is contrary to-law.

Fifth. The court erred in his findings of fact, for the reason that said findings are without the issues in the case.

Sixth. The court erred in admitting in testimony Defendant's Exhibits A. B. and C over the objections of the plaintiff, for the reason that said exhibits were not pleaded by defendant, and are not within the issues in this case, for the reason that they are champertous and void as to plaintiff, and for the further reason that the approval of said deed is not an approval, the same being conditional, that the sale under said deed is not a sale, the same being conditional, and the conditions have not been completed.

Seventh. The court erred in finding and holding that the deed from Hepsey Bear, dated September 11, 1911. to A. J. Combs, and the order approving the same, Plaintiff's Exhibit A, were not approved, ordered, issued, and made by the court, having jurisdiction of the estate of the decedent Minnie Sawyer.

Eighth. That the court erred in holding said approval mentioned in the seventh assignment herein was ministerial and not judicial, and therefore subject to collateral attack, and erred in permitting a collateral attack thereon, and in holding said deed and approval void.

The assignments of error are so related as to enable us to discuss them together. The plaintiff contended that he was in possession of the premises sued for; the defendant disputed the possession of the plaintiff, and the court failed to make any finding upon this question, but found in favor of defendant and quieted his title. The evidence, however, discloses that up to the time of the date of the conveyance to the plaintiff, the lands were wild and uncultivated, and further, that defendant had paid the taxes assessed since the lands had been purchased by him. At the time of the death of the allottee, Minnie Barnhill, her husband, not being a citizen of the Creek Tribe, and not enrolled as such, was not entitled to inherit, and the mother of the deceased was the sole heir, the half-sisters and half-brother not taking any interest in the lands. The Act of Congress of May 27, 1908, c. 199, § 9, 35 Stat. L. 315, removed all restrictions upon the alienation of the lands of a deceased allottee, and pro-vided that no conveyance of any interest of any full-blood Indian heir should be valid, unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee.

The trial court found, and the evidence is sufficient to sustain the finding, that the deceased, Minnie Sawyer, was a resident of Pittsburg county at the time of her death, and that the county judge of Pittsburg coun_ty was the only tribunal clothed with authority to approve the deed of the full-blood heirs. The approval of plaintiff's deed from Hepsey Bear by the county judge of McIntosh county gave the deed no validity whatever. In the case of Bartlett v. Oklahoma Oil Co. (D. C.) 218 Fed. 380, Judge Campbell has written an exhaustive opinion upon the question of the approval of conveyances of full-blood heirs. The opinion holds that the only court with authority to approve such a deed is the county court of the county of which the deceased was a resident, and which had jurisdiction of the estate of the deceased, and that the approval by the court of any other county is unauthorized and void. In the instant case, we hold that the county court of Pittsburg county was the only court having jurisdiction of the settlement of the estate of the deceased, Minnie Sawyer, and was the only court having jurisdiction to approve any deed of Hepsey Bear made after the act of May 27, 1908. covering the allotment of the deceased, and that the approval of the conveyances to the plaintiff, or his vendors, by the court of McIntosh county, was unauthorized and void. Hope v. Foley, 57 Okla. 513. 157 Pac. 727.

In the case of Harris et al. v.. Bell et al., 250 Fed. 209 (U. S. Cir. Ct. App. 8th Cir., filed April 30, 1918), wherein a full-blood heir of a deceased Creek allottee executed a deed to her interest in the allotment on the 15th of January, 1908, the deed being approved July 6, 1910, by the Secretary of the Interior, the court said:

"The argument is that the act of May 27, 1908, repealed the provision of section 12 of the act of April 26, 1906, regarding the approval of the Secretary and that this deprived him of the power to approve deeds made before the passage of the act of May 27, 1908. But that act declares that: 'The Secretary of the Interior shall not be prohibited by this act from continuing to remove restrictions as heretofore, and nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act.' 35 Stat. 312. It makes an express amendment of the act of April 26, 1906 (35 Stat. 315) §

8, and it contains no express repeal of that act or of the provision of section 22 which empowered the Secretary to approve deeds of full-blood heirs. The rational and established rule is that where the validity of conveyances of land is conditioned by the approval of different officers, or by different restrictions at different times, the law in force at the date of the deed determines the restriction upon its validity, and that where at that date a specified officer is empowered to approve and validate it, he or his successor in office may lawfully do so after subsequent legislation has conditioned the validity of like conveyances with the approval of a different officer, or with different restrictions, and the true construction of section 9 of the act of May 27, 1908. is that it is prospective, and not retrospective, in effect, that it applies to conveyances made after its passage, and is inapplicable to those before its enactment. Pickering v. Lomax, 145 U. S. 310, 315, 12 Sup. Ct. 860, 36 L. Ed. 716; Lykins v. McGrath, 184 U S. 169 172, 22 Sup. Ct. 450, 46 L. Ed. 485; United States v. Knight, 206 Fed. 145. 148, 124 C. C. A. 211; Harris v. Gale (C. C.) 188 Fed. 712, 716; MacHarry v. Eatman. 29 Okla. 46, 116 Pac. 935, 941. And the decision is that Annie's deed was validated by the approval of the Secretary of the Interior on July 6, 1910, that it then became a legal conveyance of all her interest in the 160 acres here in controversy. and that thereupon it related back and took effect as of the date of its execution."

The plaintiff urges that the trial court erred in holding that the order of the county court of McIntosh county approving the deed to Hepsey Bear could be attacked collaterally: that is. that the court found as a legal proposition that the order approving the deed from Hepsey Bear was ministerial and not judicial. With this contention we cannot agree. The county judge in approving a full-blood deed performs no judicial act in the strict sense of the term. The court is only required to find, for the protection of the full-blood, that no wrong is done, that the consideration is adequate, that no undue influence is used. etc. The order of approval, being ministerial and void, is subject to collateral attack. Brader v. James. 49 Okla. 734. 154 Pac. 560; Hope v. Foley, supra; Cochran et al. v. Blanck, 53 Okla. 317, 156 Pac. 324.

Was the trial court warranted in rendering judgment in favor of the defendant, quieting his title to the land as against the plaintiff? The prayer of the petition filed by Hepsey Bear and others, supra, was that an order be made by the court approving the sale of the land and of said deeds then tendered and each of said deeds. It will be observed that the deeds referred to were those of 1907, and the deed of April 3, 1914, respectively. The order of court, offered and received in evidence, approves the deed of September 30, 1907, and is silent as to the deed of April 3, 1914. The deed introduced in evidence as defendant's Exhibit C is the deed of Hepsey Bear to the defendant of date April 3, 1914. The defendant obtained no rights to the land by reason of the deed dated September 30, 1907, for the reason that the Secretary of the Interior was the only person authorized to approve the same, and as the records fail to disclose any order of the county court of Pittsburg county approving the deed of April 3, 1914, we are unable to understand how the trial court could quiet the title of the defendant; in other words, there was nothing for the court to act upon. As to the question of possession the court failed to make any finding.

As we view the record, the only judgment under the pleadings and evidence the court could have rendered would have been a judgment in favor of the defendant for costs. leaving the parties just where they stood before the commencement of the action. It is a well-settled principle of law in this state that in ejectment. plaintiff must recover upon the strength of his own title rather than upon the weakness of the title of his adversary. Mullen v. Glass, 43 Okla. 549, 143 Pac. 679. Plaintiff claims that he was in possession of the premises at the time of the purchase by the defendant, and that the deed executed to the defendant was champertous. Section 2260, Rev. Laws 1910, does not apply when one has gone into possession under a deed executed by an Indian while restricted. It has been held in a number of cases by this court that this statute does not apply to a conveyance by a restricted Indian, and where a purchaser goes into possession under such a conveyance, the possession of such grantee by virtue of the void conveyance does not affect the right of the restricted Indian to execute other conveyances. In Thompson v. Riddle, 69 Okla 115, 171 Pac. 331, the court said:

"To hold that the champerty statute is applicable and rendered conveyances void made to others than the one in adverse possession would leave the Indian, his restrictions on alienation being removed, only the alternative of selling his lands to the person in adverse possession or bring an action to dispossess. This would be giving force and effect to these attempted conveyances and transactions which the law denounced as absolute nullities."

To the same effect is Murrow Indian Orphans' Home v. McClendon, 64 Okla. 205, 166 Pac. 1101. Therefore any conveyance by Hepsey Bear, being a full-blood heir of Minnie Barnhill, nee Sawyer, was of no force or validity until the same was approved by the county judge of Pittsburg county, and if before approval her grantee entered upon and held the land for more than one year, his possession in no manner affected the right of the full-blood heir to execute another deed. In contemplation of the act of Congress, the conveyance is dead until the county judge of the proper county, by his approval, makes alive and active that which before was dead and of no effect; and under these circumstances, if Hepsey Bear executed a deed to the defendant, J. E. Dyer, the validity of this last deed would not be affected by the champerty act. The act of Congress as to the approval of such deeds by the county judge controls. Sanders v. Melson, 73 Oklahoma, 174 Pac. 755.

The contention of plaintiff that the defendant claimed the land by title acquired after the commencement of the suit is not tenable for the reason that the recovery by the plaintiff could be defeated by defendant showing title in himself, and this title may be shown, though it be acquired subsequent to the commencement of the action. Eller v. Noah, 66 Okla. 819, 168 Pac. 819.

We are unable to see any merit in plaintiff's exception to the admission of the depositions of the witness, Jeff Isaacs. The court allowed the depositions to be withdrawn for the purpose of correcting same by the proper certificate of the officer taking the same. We fail to discover from an examination of the record wherein any error was committed in allowing the depositions read, and plaintiff in error fails to point out the error, if any.

The judgment is therefore reversed, and cause remanded for further proceedings not inconsistent herewith.

All the Justices concur.