## ADAMS v. HOSKINS et al.

No. 16572. Opinion Filed April 12, 1927.

Supplemental Opinion on Petition for Rehearing, June 7, 1927.

Rehearing Denied July 26, 1927.

(Syllabus.)

1. **Appeal and Error—Review—Sufficiency of Evidence—Law Action Tried to Court —Action in Ejectment Though Joined with Prayer for Quieting Title.**

Where plaintiff pleads that she inherited

an interest in certain real estate from her deceased husband, and is therefore the owner of the legal and equitable title thereto, but that her interest is adversely held by the defendants and prays for possession thereof, plaintiff pleads a cause for recovery of specific real property, or ejectment, and this is true even though plaintiff joins an additional prayer that her title be quieted. Where a jury is waived and the issues of fact in such an action are tried to the court, the sufficiency of the evidence to sustain its verdict and findings, when questioned on appeal, is controlled by the rule in law actions.

**2. Appeal and Error—Theory of Case as Tried Controlling—Issue of Minority of Grantor in Deeds.**

Where plaintiff pleads the invalidity of certain deeds, made and delivered by her husband, from whom she claims to have inherited real estate, because of his minority, although the answer of defendants may be ambiguous as to whether it admits or denies the minority plaintiff pleaded, yet where counsel for plaintiff and defendant try the issue of minority, this is such an interpretation of the pleadings as binds both parties on appeal.

**3. Appeal and Error—Review—Indians— Invalidity of Deed Made Pursuant to Contract Made During Grantor's Minority—Burden of Proof—Conclusiveness of Findings.**

When a Creek freedman executes and delivers a deed to his surplus allotment in October, 1907, admittedly after he arrives at majority, which deed recites a good and sufficient consideration, it may be adjudged void under the provisions of section 19 of the Act of Congress of April 26, 1906 (34 Stat. L. 137), if executed in pursuance of a contract made during minority; but where it is sought to have such a deed so adjudged, the party asserting its invalidity on this ground has the burden of proof, and the evidence offered to sustain same must be such as to overcome the presumption which clothes the deed with validity to pass the title. In the absence of proof of such character, a finding by the trial court to the effect that the deed was not invalid by reason of the inhibition of said section 19 cannot be disturbed by this court.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by Cora Adams against Annetta Hoskins et al. Judgment for defendants, and plaintiff brings error. Affirmed.

James M. Hays, for plaintiff in error.

E. T. Noble, S. L. O'Bannon, and Cochran & Ellison, for defendants in error.

BRANSON, C. J. Herein is presented error for reversal from the district court of Okmulgee county. Cora Adams, formerly Coleman, sued Annetta Hoskins and Bertie De Steiguer. Judgment went for the defendants. The plaintiff's action is for recovery of specific real property, or ejectment. Her petition alleges that she, as owner of the equitable title to half the land described, is entitled to the immediate possession thereof, as against the defendants, by reason of this state of facts, to wit: That on December 7, 1909, she was the wife of one March Coleman, who departed this life on said last-named date, leaving surviving him his mother, Dolly Stidham, and the plaintiff, as his sole heirs at law; that she inherited an undivided one-half of 120 acres of land, which is referred to as the surplus allotment of March Coleman; that her said husband, March Coleman, was a citizen of the Creek Nation, duly enrolled upon the final rolls of said tribe as a freedman (Supplemental Creek Agreement, July 1, 1902, 32 Stat. L. 500); that March Coleman on the 9th day of September, 1905, executed and delivered to W. E. Wood and J. G. Elred a warranty deed to said land; that two other deeds were executed to different grantees on different dates prior to the 29th of October, 1907; that said deeds so made prior to the 29th of October, 1907, were executed while her said husband was a minor, and that they were absolutely void by virtue of the provisions of the said Supplemental Agreement of 1902; that her said husband arrived at the age of majority on the said date, October 29, 1907, and on said date he executed and delivered a deed to the De Steiguer Investment Company, a corporation, which recited a consideration of $2,040; that the De Steiguer Investment Company subsequently conveyed to the defendants herein; that these transactions occurred prior to her marriage to the said March Coleman; that she married the said March Coleman on the 8th day of December, 1908, or about a year prior to his death.

Plaintiff further pleads that the deed made October 29, 1907, although made after majority, was itself void, in that it was executed in pursuance of an agreement theretofore made, and fell within the inhibition of that part of the act of the national Congress of April 26, 1906 (34 Stat. L. 137) which provides:

"And every deed executed before, or for for the making of which a contract or agreement was entered into before the removal of restrictions be, and the same is hereby declared void."

Having pleaded as herein set out, the

plaintiff prayed possession of a half interest in the land, for damages, and that her title thereto be quieted.

The defendants pleaded the general issue, except certain admissions. They admit that March Coleman was allotted the land in question as a citizen of the Creek Tribe, and was a duly enrolled freedman; that they were in possession of the land; and assert that they and those through whom they claimed had been in the adverse possession thereof since about November, 1907.

Since certain phraseology in the defendants' pleadings is drawn in question in the briefs, such portions are set out at this point. They are:

"Defendants admit that on the 29th day of October, 1907, the said March Coleman was of full legal age, and on said day, after he had reached his majority, the said March Coleman conveyed the real estate and premises hereinabove described, to the De Steiguer Investment Company."

And further, in that part of the answer designated "Cross-Petition," we find:

"Defendants allege that after the said allottee, March Coleman, reached his majority, to wit, on October 29, 1907, he conveyed all of the said real estate and premises to the De Steiguer Investment Company, by a good and sufficient warranty deed."

It is further pleaded by the defendants that on the death of the said March Coleman, he left surviving his mother, Dolly Stidham, enrolled as a citizen of the Creek Nation, on the freedmen roll No. 375, and that she was the sole and only heir of March Coleman by reason of the proviso to section 6 of the Supplemental Creek Agreement of 1902 (32 Stat. L. 500).

The record discloses that when this case was called for trial, plaintiff waived a jury and tried the cause to the court.

In this connection, a contention is made that this is a suit of purely equitable cognizance. We cannot agree with this position of counsel for plaintiff. There is nothing cognizable under any equitable principle drawn in issue by the pleadings, or the answer. Plaintiff asserts her ownership to a half interest in the land by inheritance from her husband. In order to prevail, she asserts that the three deeds made by her deceased husband prior to October 29, 1907, were made during his minority. If this assertion is correct, these deeds were void as a matter of law, the acts of the national Congress governing these allotments making all such conveyances by minors absolutely

void. Their validity could not be tested by any equitable principle. To prevail, plaintiff found it necessary to get rid of the conveyance made after the allottee reached majority. In order to do this, she pleaded and undertook to prove that it was void because it was made in pursuance of a contract entered into between the grantee and the grantor during the minority of the grantor, and that the said provision of the said Act of April 26, 1906, made it void. If this were true, it was void by reason of the express provisions of the law, and not susceptible of being vacated and set aside by reason of any relief known to equitable principles. If all of these deeds were swept away, being the wife of the allottee at the time he died intestate, her right came to her by reason of the law of succession, if in fact she, being a noncitizen of the Creek Nation, could inherit from a citizen thereof (proviso, section 6, Supplemental Creek Agreement 1902). Having made these allegations as the basis of her right, she pleaded an action for the recovery of specific real property, and if the facts showed she was entitled to recover, the instruments set up should have been adjudged to be of no validity, not upon any equitable principle, but because they were void as a matter of law.

We must therefore consider the questions here in the light of the rules governing judgments in law actions, which is to the effect that if there is evidence reasonably supporting the verdict of a jury, or the verdict and findings of a court, where a jury is waived, the same will not be disturbed by this court. This brings us to the verdict and findings of the trial court. Plaintiff's brief recites:

"Of the separate findings of fact made by the court, only two are material. The others are incidental to these two. These two are: '(2) That the said March Coleman, to whom the said land was allotted as aforesaid, was also known as Buddie Coleman: that he was born in the month of August, 1884, and reached the age of 21 years in the month of August, 1905, and died on December 7. 1909'; and '(10) On October 29, 1907, said March Coleman made, executed, and delivered to the De Steiguer Investment Company a general warranty deed, conveying said lands, and that said deed was not made in pursuance of any prior contract or agreement so to do, but that the same was an independent transaction for an independent consideration.'"

The plaintiff says on appeal and in her briefs that the said first-quoted finding of the trial court is not justified, for two reasons: First, that defendants admit in their

pleadings that March Coleman was born October 29, 1886; and second, that the evidence does not support the said finding.

It is in view of this first-mentioned contention that we quoted the excerpts from the defendants' pleadings. The question on the first proposition then is the interpretation of defendants' pleadings.

In this connection, we must say that there is nothing in the record which discloses that the contention was made to the trial court that the above-quoted parts of defendants' answer should be held to admit that the allottee was a minor up to October 29, 1907. The record discloses that the plaintiff interpreted the pleadings in the trial court to the effect that the question of the date of birth of the allottee was one of the issues triable in the case, for in the opening statement by plaintiff's counsel, which appears at page 64 of the record, we find this:

"The plaintiff says that the said March Coleman was born on the 29th day of October, 1886, and that at all times thereafter and until the 29th day of October, 1907, he was a minor, and on said date attained his majority. **That is the date that is in contest in this action.** There will be more said about that date than any other date."

Language, as we view it, could not make it clearer that this was an issue for trial, and one of the principal issues for trial.

Following up this statement, counsel for plaintiff introduced the first witness, one Mary Dan. After identifying Mary Dan, counsel for plaintiff asked the witness, "Do you know when March Coleman was born?" A. Yes, sir." Later on: "Who was the mother of March Coleman?" A. "Dolly Stidham." These questions were followed by others, which evoked, without objection from any one, evidence tending to show that the allottee was born in 1886. Many other witnesses were introduced, among whom was one Ellen Jefferson, and counsel for plaintiff asked this question: "You may state, if you know when March Co'eman was born?" A. "Well, March Coleman was born October 29, 1886." (C.-M. p. 85.) To rebut this testimony as to the date of birth of the said allottee, the defendants introduced the mother of March Coleman, to wit Dolly Stidham, who testified, in effect, that March Coleman was born in August, 1884. Other members of the family testified, in effect, the same. This was without objection by the plaintiff's counsel, and, although it may be conceded that those parts of the answer of the defendants quoted hereinabove are ambiguous, the parties interpreted the pleadings as raising the question of date of birth as an

issue for trial, and presented this to the trial court as one of the issues, and the pleadings as so interpreted by the parties cannot by this court be construed in any other light. This proposition is well settled in the authorities. Natl. Life Ins. Co. of Hartford v. Eastern Bldg. & Loan Ass'n (Neb.) 88 N. W. 863; Town of Cameron v. Hicks (W. Va.) 64 S. E. 832; C., R. I. & P. Ry. Co. v. Kerr (Neb.) 104 N. W. 49; Savannah Electric Co. v. Lowe (Ga. App.) 108 S. E. 313; Marlboro Cotton Mills v. O'Neal (S. C.) 103 S. E. 781; Dowell v. Boyd (Ark.) 215 S. W. 169.

Again, a reason why the plaintiff cannot prevail on this contention is that since counsel, as said supra, made to the trial court the statement of this issue and evidence was introduced which had but one purpose, and that was to determine the date of birth of the allottee, and this was done without objection from either party, and if it were necessary, the pleadings would be considered amended accordingly. Harn v. Patterson, 58 Okla. 694, 160 Pac. 924. Atlas Assurance Co., Ltd. v. Leonard, 108 Okla. 150, 234 Pac. 771; Mulhall v. Mulhall, 3 Okla. 252, 41 Pac. 577; Carson v. Vance, 35 Okla. 584, 130 Pac. 946; Harris Buick Co. v. Boyd, 97 Okla. 58, 222 Pac. 269; Homeland Realty Co. v. Robinson, 39 Okla. 591, 136 Pac. 585; Parsons v. Heenan, 103 Okla. 295, 230 Pac. 502; Gallagher v. Petree, 103 Okla. 295, 230 Pac. 477.

There is still another reason why plaintiff cannot successfully urge this proposition. It is this: A party to an action, having presented his case or defense to the trial court upon a certain and definite theory, or contention, is bound thereby on appeal to this court. Ruby v. Warrior, 71 Okla. 83, 175 Pac. 355; Smith v. Colson, 31 Okla. 703, 123 Pac. 149; Hutchison v. Brown, 66 Okla. 250, 167 Pac. 624; Wallace v. Duke, 44 Okla. 124, 142 Pac. 308; Doggett et al. v. Doggett, 85 Okla. 90, 203 Pac. 223.

For all of the above enumerated reasons, the holding must be against the plaintiff on the said finding "2" of the trial court, for it is not, as plaintiff suggests, a question of the defendants being bound by their pleadings, for certainly, if the defendants unequivocably admitted the date of birth of the allottee, or admitted the date on which the allottee arrived at the age of majority, there would have been no issue to present to the trial court on this question. Defendants did not do this. Read in connection with the context of all the pleadings, it is not a fair interpretation to insist that the answer admitted that March Coleman arrived at majority

on the 29th day of October, 1907. Certainly this construction cannot be placed upon it, in view of the fact that the plaintiff declared in the trial court that the date of birth of the allottee was one of the questions as to which evidence would be introduced, and a large amount of evidence was introduced on that question. and the defendants undertook to meet the issue by an introduction of evidence. This constituted such an interpretation of the pleadings as justified the trial court in pronouncing judgment upon that issue.

Our conclusions thus far lead to the inquiry as to whether or not this first-mentioned finding of the trial court as quoted supra, to the effect that the allottee was born in August, 1884, is reasonably supported by the evidence. We find that the mother testified that her son March, or "Buddie", as he was frequently called, was born in August; that she had two other children, Jake and Joe Tobler; that the last-named sons were arrested for killing a man; it was stipulated by the parties that this killing was in 1885; that they were indicted in September, 1886, at Wichita, Kan., and were executed by hanging in the last-named city on November 21, 1888; that the mother testified that her son March was born a year before Jake and Joe were arrested for the said homicide. It also appears, and is not contradicted, that one Sam Checote, former Chief of the Creek Nation, had performed the marriage ceremony between Dolly and Morris Stidham. That he was well known to Dolly Stidham; that Sam Checote died in the fall of 1884, and that March Coleman was born in the summer prior thereto. Several other members of the family testified in effect the same. From this evidence, the trial court found as a fact that the allottee was born in August. 1884. Although there was evidence from other persons who undertook to place his birth in 1886, we are unable to say that the verdict and finding of the trial court is not reasonably supported by the evidence.

The next finding which plaintiff quotes, to wit. "No. 10," as set out supra, is to the effect that the deed made by the allottee to the De Steiguer Investment Company was not made in pursuance of a prior contract or agreement so to do.

On this question the record is meagre. Of course the burden was on the plaintiff to establish this in order to avoid the deed under the said Act of Congress of April 26, 1906. The plaintiff was the only witness on this subject. Although this deed was executed more than a year before she married the allottee, she stated that when one of the deeds was executed, February 28, 1907, which purported to convey the land to one Hoskins, there was a contract executed. It developed that Hoskins was present in court. No demand was made on him to produce the contract and the alleged contract was not produced by the witness. Neither was it shown to be lost or destroyed. Under these circumstances. the court sustained objection to a question as to its alleged contents under the rule announced by this court in the case of Farmers Nat. Bank v. Hartoon et al., 60 Okla. 193, 159 Pac. 854. This being the state of the record, there was nothing before the trial court sufficient to overcome the presumption that the deed of October 29, 1907, was made for a separate and independent consideration, and disconnected with prior deeds made to other parties.

We find that the verdict and findings of the trial court were reasonably supported by the evidence on these two propositions. By reason thereof, its judgment found that at the time of the death of the allottee in 1908, he was not the owner of the property, and therefore plaintiff inherited nothing.

Another contention is raised by the pleadings and argued in the briefs. It is this: The plaintiff, Cora Adams. is a noncitizen of the Creek Nation. Her suit is in ejectment to recover the possession of real estate. Following the rule so often announced by this court, she must recover, if at all, upon the strength of her own title, and not upon the weakness of her adversary. This rule is tersely announced in the case of Mullen v. Glass et al., 43 Okla. 549, 143 Pac. 679, as follows:

"In ejectment, the plaintiff must recover upon the strength of his own title, rather than upon the weakness of the title of his adversary." ·

This pronouncement of the law in the briefs is merely preliminary to a discussion of the proviso to section 6 of· the Supplemental Creek Agreement, supra. The said proviso follows a general provision making chapter 49 of Mansfield's Digest to the Statutes of Arkansas applicable to descent and distribution of Indian land.

"Provided, that only citizens of the Creek Nation male and female, and their Creek descendants, shall inherit lands of the Creek. Nation. * * *"

It appears in the instant case that the mother. Dolly Stidham, survived the allottee, and she was a citizen of the Creek Nation; that the plaintiff was a noncitizen. and we

are again faced with the question as to whether the plaintiff could recover, even conceding that the allottee died seized and possessed of the real estate. This question has been before this court in numerous cases.

It has also been before the Supreme Court of the United States. Washington v. Miller, 59 L. Ed. 295; Grayson v. Harris, 69 L. Ed. 652.

We deem it unnecessary to discuss this question, as the conclusions reached on the above propositions control. The judgment of the trial court is affirmed.

MASON, V. C. J., and PHELPS, LESTER, RILEY, CLARK, and HEFNER, JJ., concur.

---

On Petition for Rehearing.

PER CURIAM. This matter is now before this court upon petition for rehearing filed by the plaintiff. It is directed primarily at the law announced in paragraph 1 of the syllabus, and the reasoning of the opinion leading thereto. It alleges that this holding is contrary to holdings of this court, and cites as the leading case in support of this assertion, Carter v. Prairie Oil & Gas Co., 58 Okla. 365, 160 Pac. 319, and other cases, making reference thereto. The contention is made that this is an action of purely equitable cognizance, and that the law rule as to the evidence should not be applied. In the original brief filed by the plaintiff (page 46) it is asserted that plaintiff's claim to said property is

"That March Coleman attained his majority on the 29th day of October, 1907; that March Coleman died December 7, 1909; that on said date, December 7, 1909, he was the owner and holder of the legal and equitable title to the land involved in this action; that March Coleman left surviving him no issue; that Dolly Stidham, his mother, and the plaintiff, Cora Adams, his wife, survived him; that the title to the aforesaid tract of land descended on his death to his wife, Cora Adams, and his mother, Dolly Stidham, in equal one-half moieties."

In the petition for rehearing (page 12) it is said: "It is true that the first one and one-half pages of the petition seek possession of property unlawfully withheld from the possession of plaintiff." Then the petition asserts that certain deeds were made in violation of the acts of Congress, which were void.

Directing our attention to the said case of Carter v. Prairie Oil & Gas Co. et al., we find that the first sentence in the said opinion is to the effect that on January 4, 1914, in the district court of Creek county, Annie Carter sued the defendants to clear her title of a deed to 120 acres of land, her surplus allotment as a citizen of the Creek Nation, on the ground it was procured by fraud, and second, was executed in violation of section 19 of the Act of Congress approved April 26, 1906 (34 Stat. L. 144). This case involved fraud, relief against which is of equitable cognizance. The other cases cited in the petition for rehearing, when analyzed from the record and the briefs on file, are not persuasive on the question involved here.

While in the case of Williams v. Diesel, 65 Okla. 163, 165 Pac. 187, reference is made to the Carter Case, supra, yet it does not recite any pleading as to fraud in that case. It was immaterial, as the evidence therein was undisputed.

Referring to the first above quotation from the original brief of the plaintiff filed in this court, as well as that part of the petition for rehearing above quoted, it is clear that plaintiff pleaded that she was the owner of the legal and equitable title by inheritance to the land, and that defendants unlawfully kept her out of possession, for which she prayed. This constitutes an action for the recovery of specific real property, and the mere fact that she coupled with this action an action to quiet title does not make this an action of purely equitable cognizance.

This direct question was before this court in the case of Mitchell v. Gafford, 73 Okla. 152, 175 Pac. 227. In the syllabus, the court said:

"The fact that the petition in the action for the recovery of real property prays that the title of the real estate sought to be recovered be quieted in the plaintiffs, does not make the action a nonjury case, but it remains an action properly triable by jury under the provisions of section 4993, R. L. 1910."

In the body of this opinion, the court states:

"The petition also prays that title to said tract of land be quieted in plaintiffs as against the defendants, and it is argued that this renders this action one in equity, and that the prayer for the possession of real estate is a mere incident for quieting of the title. * * * We think that the converse of this proposition is true; that the action is an action at law, to recover specific real property, and that the quieting of the title in plaintiffs is a mere incident, which would follow a recovery by plaintiffs in the action."

In the case of Strawn v. Brady, by Justice Kennamer, 84 Okla. 66, 202 Pac. 505, this court said:

"In an action in ejectment and to quiet title, wherein the plaintiff and the defendant assert title to the lands through a common source, and the decisive issue in the action is the age of the grantor of the plaintiff and the defendant, the issue was properly submitted to a jury upon the demand of the defendant for a jury trial." Gill v. Fixico, 77 Okla. 151, 187 Pac. 474; Thompson v. Smith, 102 Okla. 150, 227 Pac. 77.

We think the rule that an action of this character, where the pleadings as interpreted by the briefs are as here, is so clearly an action primarily for the recovery of specific real property, or ejectment, that no well-reasoned case in which the question was presented to the court can be found to the contrary. It is not amiss to cite additional authorities on questions analogous to those here: Preston v. Tremble, 7 Cranch (11 U. S.) 354, 3 L. Ed. 369; Smyth v. New Orleans Canal & Banking Co., 34 Fed. 825, 141 U. S. 656, 35 L. Ed. 891; Chamberlain v. Marshall, 8 Fed. 398; Polk v. Wendal, 9 Cranch, 99; U. S. v. Stone, 2 Wall. 535; Eiffert et al. v. Craps et al., 58 Fed. 470; Wilkinson v. Wilkinson (Ala.) 30 South. 578; Dalton v. Hamilton et al., 50 Cal. 422; Benton County v. Morgan (Mo.) 64 S. W. 119: Campbell v Campbell (Wis.) 15 N. W. 138; Chi'ds et al. v. Cook et al., 68 Okla. 240, 174 Pac. 274; Word v. Nakdimen et al., 74 Okla. 229. 178 Pac. 257; Atkinson et al. v. Crcwe Coal Co. (Kan.) 102 Pac. 50.

Petition for rehearing is denied.

Note.—See under (1) 4 C. J. p. 876, §2853; 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91; 6 R. C. L. Supp. 75. (2) 4 C. J. p. 701, §2609; 2 R. C. L. p. 79: 1 R. C. L. Supp. p. 387; 4 R. C. L. Supp. p. 79 5 R. C. L. Supp. p. 68. (3) 4 C. J. p. 879. §2853: 18 C. J. p. 422 §501: 31 C. J. p. 519, §91.